## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br><br>**STEVEN BERNITZ,** )<br><br>**Plaintiff,** )<br><br>**v.** )<br><br>**USABLE LIFE and FULLSCOPE RMS,** )<br><br>**Defendants.** )<br>_____ ) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **Case No. 22-cv-10712-DJC**<br>)<br>)<br>)<br>) |

### MEMORANDUM AND ORDER

**CASPER, J.**                                                                  **June 24, 2024**

### I.      Introduction

Plaintiff Steven Bernitz ("Bernitz") brings this action against USAble Life and Fullscope RMS (collectively, "Defendants") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging that Defendants improperly denied his long-term disability ("LTD") benefits.  D. 1.  Bernitz and Defendants have each moved for summary judgment.  D. 73; D. 75.  For the reasons set forth below, Defendants' motion for summary judgment, D. 75, is ALLOWED, and Bernitz's motion for summary judgment, D. 73, is DENIED.

### II.      Factual and Procedural Background

#### A.      **The Plan**

In December 2013, Synta Pharmaceuticals ("Synta") hired Bernitz as Senior Vice President of Corporate Development.  AR. 1.[1]  Synta offers employees long term disability insurance

_____

[1] Unless otherwise noted, all facts are drawn from the administrative record ("AR.") at D. 42.

coverage pursuant to a group policy ("Group Policy") issued by USAble Life.  AR. 7526.  The Group Policy defines, in relevant part, disability as "[a]n injury, sickness, or pregnancy [that] requires that you be under the regular care of a physician, and prevents you from performing at least one of the material duties of your regular occupation with reasonable accommodations." AR. 7532.  The definition further provides that "[i]f you can perform the material duties of your regular occupation with reasonable accommodation(s), you will not be considered disabled.  The inability to perform a material duty because of the discontinuation of reasonable accommodation(s) on the part of the employer does not, in itself, constitute disability." AR. 7532. "Material Duties" are "the sets of tasks or skills required generally by employers from those engaged in an occupation.  We will consider one material duty of your regular occupation to be the ability to work for an employer on a full-time basis as defined in the policy."  AR. 7533. "Regular Occupation" is "the occupation in which you were working immediately prior to becoming disabled." AR. 7535.

The Group Policy requires a claimant to provide "all of the information [USAble Life] specif[ies] as necessary to determine proof of loss and decide our liability.  This may include but is not limited to:  medical records; hospital records; pharmacy records; test results; therapy and office notes; mental health progress notes; medical exams and consultations; tax returns; business records; Workers' Compensation records; payroll and attendance records; job descriptions; Social Security award and denial notices; and Social Security earnings records." AR. 7541.  If a claimant "do[es] not provide [USAble Life] with continuing proof of disability and the items and authorization necessary to allow [USAble Life] to determine [its] liability, [it] will not pay benefits." AR. 7541.  The Group Policy grants USAble Life "the sole discretionary authority to

determine eligibility for participation or benefits and to interpret the terms of the policy."[2] AR. 7540.

### B.   Bernitz's Initial Claim for LTD Benefits

Bernitz stopped working in June 2014 due to back pain.  AR. 1; AR. 7506–07.  Bernitz submitted a claim for disability benefits, in which he stated that he had experienced an "onset of severe pain suddenly upon standing up in late April" and that the pain was "most severe when sitting for over 2-3 hours per day."  AR. 7505.  Bernitz described his occupational duties as "management, desk work, frequent meetings, travel, [and] conferences."  AR. 7505.  Bernitz's claim included a statement by Dr. Omar El-Abd, who noted that MRI results had shown signs of severe degenerative disc disease and neuroimpingement.  AR. 7506.  Dr. El-Abd classified Bernitz's physical impairment as a "Class 5" physical impairment, i.e., a "[s]evere limitation of functional capacity; [i]ncapable of minimum (sedentary[ ]) activity."  AR. 7506.

On September 9, 2014, USAble Life notified Bernitz that it had to conduct a "pre-existing review" of his LTD benefits claim because he had stopped working within the first twelve months of his coverage date of December 19, 2023.  AR. 7495.  USAble Life referred Bernitz's claim file to Nurse Kristen Fielding for an independent review of his medical records.  AR. 7057–58; see AR. 7062 (noting that the medical opinions contained in Nurse Fielding's report "reflect the medical reviewer's independent judgment").  On February 11, 2015, Nurse Fielding completed a medical review form in which she recommended further inquiry into Bernitz's gabapentin

---

[2] The Group Policy also contains an exclusion for pre-existing conditions, which provides that "[b]enefits will not be paid if your disability begins in the first 12 months following the effective date of your coverage and your disability is caused by, contributed to by, or the result of a pre-existing condition, unless you had no treatment of the pre-existing condition for 3 consecutive months after your effective date of coverage."  AR. 7554.

prescription and refills, to clarify whether they were related to Bernitz's lumbar spine symptoms. AR. 7061–62.

Nurse Fielding then sent questionnaires to Dr. El-Abd and Dr. Guy Pugh to determine the reasons for prescribing gabapentin and refills of same. AR. 7031–32; 7035–36. Dr. El-Abd confirmed that gabapentin had been prescribed and refilled on October 6, 2013 to treat Bernitz's lumbosacral neuritis and lumbar intervertebral disc displacement, AR. 7030; AR. 7035–36; Dr. Pugh responded that Bernitz had reported taking gabapentin to treat restless leg syndrome, not back pain, when he had prescribed refills on March 19, 2014. AR. 7030–33. Accordingly, Nurse Fielding concluded that, following Bernitz's coverage date of December 19, 2013, Bernitz had gone "3 months treatment free for his impairing conditions." AR. 7030. In March 2015, USAble Life approved Bernitz's claim for LTD benefits. AR. 6980–82; AR. 7012–14.

C.   **Bernitz's Medical Treatment from 2015 to 2019**

In July 2015, Bernitz relocated from Massachusetts to California. AR. 1. In California, Bernitz visited Dr. Yogesh Patel to treat his lower back pain. AR. 6818–21. Dr. Patel diagnosed Bernitz with "[p]ostlaminectomy syndrome," "[o]ther spondylosis with radiculopathy, lumbar region," "[r]adiculopathy, lumbar region" and "[s]acroiliitis," prescribed tramadol for "breakthrough pain," and noted that Bernitz could continue taking gabapentin. AR. 6820. On November 19, 2015, Dr. Patel gave Bernitz a sacroiliac injection to treat his pain. AR. 6813–14.

Bernitz also consulted Dr. Ramin Raiszadeh, an orthopedic surgeon, in September 2015 for an initial orthopedic spine consultation, AR. 6800–03, and again in October 2015 for a follow-up evaluation. AR. 6797–99. Dr. Raiszadeh noted that Bernitz had complained of chronic back pain, AR. 6800; AR. 6802, and opined that Bernitz "may continue to have back pain and may continue to have leg pain." AR. 6798–99. Dr. Raiszadeh separately noted to USAble Life that

Bernitz's condition was "permanent and irreversible." AR. 6745. In November 2015, Dr. Choll Kim, another surgeon, explained that Bernitz's response to injections had indicated that his pain was coming from his spine. AR. 6795–96.

On April 1, 2016, Bernitz underwent back surgery, an anterior lumbar interbody fusion with placement of interbody fusion device. AR. 6228; AR. 6522. Bernitz previously had undergone spine surgery in or around 1999, 2004, 2007 and 2013. AR. 6227; AR. 7474–75.

On November 14, 2016, Nurse Fielding completed a review of updated medical records, including records from Dr. Patel, Dr. Raiszadeh and Dr. Kim. AR. 6225–30. Nurse Fielding also noted that Bernitz had "undergone multiple extensive lumbar spine surgeries." AR. 6228. Nurse Fielding ultimately concluded that Bernitz would have been able to sit for no more than one to two hours, or as limited by pain, and could stand for only fifteen to thirty minutes. AR. 6229; see AR. 6389 (Dr. Patel assessing the same limitations). Nurse Fielding also determined that, due to Bernitz's "at least 6 lumbar surgeries," it was unclear whether Bernitz would be able to perform full-time "light level" work in a sustained manner. AR. 6229.

On May 17, 2017, Dr. Patel reported to USAble Life that Bernitz condition was "permanent and irreversible" and that surgery had "resulted in very minor symptom improvement." AR. 6204. Dr. Patel added that medication and its side effects had made it "very difficult or impossible" for Bernitz to maintain prolonged concentration. AR. 6204. On June 3, 2017, Dr. Patel completed a "Physical Residual Functional Capacity Questionnaire," noting that Bernitz's medication could cause fatigue and a loss of concentration and that his condition "limits endurance significantly." AR. 6152; AR. 6155.

On October 4, 2017, at USAble Life's request, Dr. Stewart Russell completed an independent review of Bernitz's updated medical records. AR. 5949–61. Dr. Russell explained

in his report that "the insured is presently impaired from performing full-time light or sedentary occupations, secondary to his multiple subsequent back surgeries and their poor result."  AR. 5959. Dr. Russell also opined that "the impairment will be lifelong."  AR. 5960.

On January 17, 2018, Bernitz visited Dr. Biraj Shah to receive travel vaccinations in anticipation of a ten day trip to Baja, Mexico.  AR. 5134.  In the following months, Bernitz continued seeing Dr. Patel to receive injections for the treatment of his pain.  See, e.g., AR. 5009–10; AR. 5016–18; AR. 5019–20; AR. 5025–26; AR. 5035–36.

On August 1, 2018, a Social Security Administrative Law Judge ("ALJ") denied Bernitz's application for Social Security Disability Insurance ("SSDI") benefits.  AR. 5463–65.  In the ALJ's decision, he concluded that Bernitz's "statements concerning the intensity, persistence and limiting effects" of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record."  AR. 5474.  The ALJ highlighted Bernitz's "activities of daily living," including "taking college classes," "driving," "taking walks up to half a mile," "cooking," "taking out the trash," "exercis[ing] regularly with a personal trainer," traveling to "Hawaii and National Parks in the southwest," and "spend[ing] about a month in San Diego house-hunting."  AR. 5474. The ALJ also noted Dr. Patel's observation in May 2017 that Bernitz "was able to maintain an active lifestyle with the use of medication."  AR. 5474.  In addition, the ALJ determined that Bernitz was "capable of performing past relevant work as a vice president and program manager." AR. 5478.[3]

On August 28, 2018, Bernitz visited Dr. Ken Fujioka for assistance with weight loss. AR. 5151–56.  On September 9, 2019, Bernitz again saw Dr. Fujioka, who noted that Bernitz was

---

[3] The Social Security Appeals Council denied Bernitz's application for review of the ALJ's decision on August 7, 2019.  AR. 4920–22.

"maintaining an impressive weight loss" and "working with a personal trainer 3 days a week." AR. 4857.

On January 28, 2019, Dr. Patel reported that Bernitz suffered from severe back pain, which was aggravated with lifting and straining, walking and standing, and sitting.  AR. 5426.  Dr. Patel opined that Bernitz would never be able to return to work, AR. 5428, and continued treating Bernitz throughout 2019.  See, e.g., AR. 4904–09; AR. 4981–92.

On February 19, 2019, Bernitz visited Dr. Alexandra Bunyak to treat back pain.  AR. 4874. Bernitz saw Dr. Bunyak again on March 21, 2019 for a procedure aimed at treating the pain and for several follow-up appointments in April, May and June of 2019; as of May 2019, Bernitz reported left hip pain.  AR. 4877; AR. 4881; AR. 4884; AR. 4889.  On September 10, 2019, Bernitz underwent left hip arthroscopy surgery, performed by Dr. Sanjum Samagh.  AR. 4784–85.

From July 15 to July 19, 2019, USAble Life investigators surveilled Bernitz and, on July 16, 2019, observed him exercising, i.e., "work[ing] with a personal trainer on cardio utilizing a treadmill, free weights with barbells, pull downs and flys on a weight machine, as well as shoulder exercises utilizing bands and leg extensions on a weight machine."  AR. 4963–65.

On October 3, 2019, Bernitz completed an "Activities of Daily Living Questionnaire," AR. 4756–60, in which he reported that he was "unable to sit for more than 1-2 hours, or stand for more than 30 minutes without significant pain" and that his pain medications "make[ ] concentration difficult."  AR. 4756.  Bernitz also acknowledged travel to Florida to visit family and travel to Michigan to visit friends, as well as a trip to Africa.  AR. 4760–62.

On October 28, 2019, Dr. Russell completed an independent medical review of Bernitz's claim file for USAble Life.  AR. 4739–47.  Dr. Russell concluded, on the basis of updated medical records and the investigators' observations, that Bernitz's condition had improved since his prior

review.  AR. 4745–46.  Dr. Russell also noted that Bernitz had "lost about 70 pounds" and had been active.  AR. 4745–46.  Dr. Russell further explained that Bernitz's ability to drive was inconsistent with his claims of cognitive impairment and that his hip surgery in September 2019 had been performed "with good result."  AR. 4746.  Dr. Russell, thus, concluded that Bernitz was no longer physically impaired from being able to perform a full-time, light physical demand occupation.  AR. 4746.

On November 6, 2019, vocational expert Teresa Marques ("Marques") conducted an occupation assessment in light of the ALJ's denial of Bernitz's application for SSDI benefits and concluded that Bernitz's occupation as a marketing manager/director is performed at the "light" physical demand level in the national economy.  AR. 4702–06.

On December 2, 2019, Dr. Russell performed an additional review of Bernitz's medical records, which included updated records relating to Bernitz's September 10, 2019 hip surgery. AR. 3781–85.  Dr. Russell opined that recovery from the surgery likely would have temporarily impaired Bernitz for three weeks but did not otherwise change his view.  AR. 3784–85.  On December 12, 2019, USAble Life terminated Bernitz's LTD benefits.  AR. 3753–58.  As the basis for the decision, USAble Life cited, *inter alia*, Dr. Russell's reports, the ALJ's denial of Bernitz's SSDI benefits application, Bernitz's weight loss and Bernitz's travel within and outside of the United States.  AR. 3755–57.

### D.    Bernitz's Administrative Appeal

Bernitz appealed USAble Life's denial of LTD benefits on May 21, 2020.  AR. 3028–30. In support of his appeal, Bernitz submitted letters from Dr. Patel, Dr. Fujioka and Dr. Michael White, as well as statements by him and his wife.  AR. 3060; AR. 3062–63; AR. 3065; AR. 3075–

77; AR. 3085–86.  Bernitz also submitted a "Functional Capacity Evaluation" ("FCE") report by Barbara Tourtellot, dated March 18, 2020.  AR. 3032–49.

On appeal, USAble Life allowed Bernitz additional time to compile and submit additional medical records, AR. 2919; AR. 2944, and obtained a medical review from Dr. Richard Maguire. AR. 2630–54.  In an October 2, 2020 report, Dr. Maguire noted that Tourtellot's FCE report contained inconsistencies; for example, he stated that "[t]he FCE provider [did] not measure and record physiological responses to [Bernitz's] activity level or pain such as increased heart rate or respiratory rate."  AR. 2649.  Dr. Maguire recommended that USAble Life request an independent medical examination ("IME") to assess Bernitz's functional capacity, in light of the conflicting medical evidence.  AR. 2649.

On October 12, 2020, USAble Life asked Bernitz to appear for an IME.  AR. 2599.  An IME was not conducted, due to "COVID and the rates of positive cases and deaths climbing at this time."  AR. 2565–67.  USAble Life then compiled medical records for review by Dr. Richard Kaplan.  AR. 2534–35.  In his December 23, 2020 report, Dr. Kaplan concluded that, in light of the updated medical evidence, surveillance and other evidence, Bernitz was not impaired from performing occupational duties as of January 1, 2020.  AR. 2534.  Dr. Kaplan noted "numerous inconsistencies" in the medical records and opined that Bernitz was "both capable of an increased level of activity and that such an increased level of activity would likely be therapeutic in nature." AR. 2534.  Dr. Kaplan noted, for example, that Bernitz's "ability to travel internationally, including in particular on a safari to Africa" was not consistent with his asserted impairments. AR. 2541.  Like Dr. Maguire, Dr. Kaplan also considered Tourtellot's FCE report and found that her opinions were inconsistent with other evidence including Bernitz's weight loss, exercise, and domestic and international travel.  AR. 2540.  Dr. Kaplan noted that it was "not clear that the

techniques used in the [FCE] are valid to distinguish between physical requirements lower than that of a medium physical demand level."  AR. 2540.  Dr. Kaplan further observed that, given the "extremely high doses of opioid medications" that Bernitz had been taking, his medications were likely contributing to any decreased physical and cognitive function. AR. 2540–41.  On December 30, 2020, Dr. Maguire prepared a supplemental report agreeing with Dr. Kaplan's findings. AR. 2526–27.

USAble Life shared Dr. Kaplan and Dr. Maguire's new reports with Bernitz to provide him with an opportunity to respond.  AR. 2522–24.  Bernitz's counsel responded that Bernitz had been referred for neuropsychological testing "which is in the process of being scheduled" and requested that USAble Life refrain from rendering a final determination of his appeal.  AR. 2440.  Once additional medical records were submitted by Bernitz, Dr. Maguire and Dr. Kaplan prepared addendum reports (Maguire's second addendum report and Kaplan's first addendum report), in which neither physician changed their previous opinions.  See AR. 2436–37; AR. 2159–62.

On May 18, 2021, Bernitz's counsel informed USAble Life that Bernitz had to undergo additional back surgery and that there had been a delay in retrieving updated medical records from a medical provider due to a cyberattack.  D. 2179.  USAble Life sent copies of the addendum reports by Dr. Maguire and Dr. Kaplan to Bernitz, and Bernitz's counsel requested additional time to respond.  See AR. 2118.  Bernitz's counsel wrote USAble Life on August 14, 2021, seeking to confirm that USAble Life would defer its determination pending neuropsychological testing. AR. 895.

Dr. Kaplan prepared second and third addendum reports on August 30, 2021 and September 13, 2021, respectively, following Bernitz's submission of additional medical records concerning a June 2021 back surgery.  AR. 870–71; AR. 888–90.  Dr. Kaplan did not change his

opinions in these reports but noted that the record was "incomplete" and recommended further review pending the receipt of records concerning Bernitz's post-operative rehabilitation and planned neuropsychological evaluation.  AR. 870–71; AR. 888–89.

On October 10, 2021, Bernitz submitted a neuropsychological evaluation report by Dr. Kaaren Bekken, AR. 715–29, and, on December 1, 2021, he submitted a vocational assessment report by Michael La Raia, dated September 9, 2021.  AR. 649–55.  La Raia opined that Bernitz "remain[ed] vocationally unemployable" and disagreed with Dr. Kaplan and Dr. Maguire's opinions.  AR. 654.  Dr. Bekken concluded that Bernitz had suffered a "cognitive decline." AR. 722.

Upon receipt of Dr. Bekken's report, USAble Life forwarded it to an independent physician for review, see D. 701; Dr. Malcom Spica prepared a peer review report on Bernitz's cognitive function in light of the occupational duties and requirements outlined in Marques's November 6, 2019 vocational assessment.  AR. 702–04.  Dr. Spica disagreed with Dr. Bekken's interpretation of Bernitz's test scores, opining that the results did "not reflect a debilitating neurocognitive impairment."  AR. 704.

On February 3, 2022, Bernitz submitted an addendum FCE report by Tourtellot, dated January 21, 2022.  AR. 476–96.  Tourtellot stated that Bernitz "experiences problems with concentration and memory as well as fatigue as a side effect of his medications."  AR. 479. Tourtellot also noted that Bernitz was not able to sit for more than thirty-eight consecutive minutes. AR. 487.  Dr. Kaplan reviewed Tourtellot's addendum FCE report and, in a fourth addendum report dated February 11, 2022, stated that his opinions had not changed.  AR. 473–75.  He also noted that, based on additional records from December 2021, Bernitz's routine use of marijuana,

in combination with opioids, may have been contributing to his reported cognitive deficits. AR. 474.

USAble Life sent copies of Dr. Kaplan and Dr. Spica's reports on February 14, 2022 to Bernitz's counsel and allowed twenty-one days to respond.  AR. 459–60; AR. 469.  On March 7, 2022, USAble Life wrote that it would complete its review based on the contents of the claim file at that time.  AR. 445.  Bernitz's counsel responded, challenging Dr. Kaplan and Dr. Spica's findings.  PL. 540–43.[4]  USAble Life issued a determination letter on March 9, 2022 upholding the denial of Bernitz's LTD benefits claim.  AR. 426–35.  On the same day, Bernitz's counsel submitted a two-page letter from Dr. Bekken, dated March 8, 2022, responding to Dr. Kaplan and Dr. Spica's opinions.  PL. 537–39.

E.     **Bernitz Seeks Judicial Relief and USAble Life Agrees to Conduct a Post-Litigation Review**

On May 10, 2022, Bernitz filed the instant complaint against Defendants.  D. 1.  In August 2022, USAble Life agreed to consider Bernitz's March 2022 submissions and sent them to Dr. Kaplan and Dr. Spica.  See PL. 535–36.  Dr. Spica responded with an addendum report, dated August 27, 2022, see PL. 527–29, in which he disagreed with Dr. Bekken's assessment of Bernitz's cognitive function, citing a lack of evidence for same.  PL. 528.  Dr. Spica also submitted to Dr. Bekken a list of questions asking, *inter alia*, why she did not include "more sensitive measures of effort" in her analysis.  PL. 521.  Dr. Kaplan separately responded in a September 6, 2022 addendum report, indicating that his opinion had not changed.  PL. 510–12.  USAble Life forwarded these addendum reports to Bernitz's counsel, and Dr. Bekken responded with additional

---

[4] References to the post-litigation record at D. 42-7 shall be to "PL. ___."

letters, defending her opinions and disagreeing with Dr. Spica and Dr. Kaplan's characterization of same.  See PL. 449–50; PL. 496–501.

Dr. Spica again responded with an addendum report, dated September 18, 2022, PL. 483–84, and Dr. Kaplan responded with an addendum report dated September 22, 2022.  PL. 473–74. Both physicians reviewed Dr. Bekken's report and noted that their opinions had remained unchanged.  PL. 483; PL. 474.  Bernitz's counsel then submitted additional medical records in response to these addendum reports.  PL. 386.  Dr. Spica, again, prepared an addendum report dated November 5, 2022, PL. 298–99, and Dr. Kaplan prepared an addendum report dated November 9, 2022, PL. 222–24; neither physician changed their opinion.  Dr. Bekken wrote an additional response on November 30, 2022, PL. 148–49, and Dr. Spica and Dr. Kaplan responded with additional addendum reports dated December 10 and December 15, 2022.  PL. 91–93; PL. 137–38.  Dr. Bekken sent a final response to Dr. Kaplan on December 16, 2022, D. 85, to which Dr. Kaplan responded on January 5, 2023.  PL. 74–76.

After Bernitz's counsel indicated that she would not be sending additional records, PL. 23, USAble Life issued a final decision on February 28, 2023.  PL. 12–24.  The decision referenced materials from USAble Life's post-litigation review, including the reports by Dr. Kaplan and Dr. Spica, and concluded that the prior determination denying Bernitz's LTD benefits claim, dated March 9, 2022, had been correctly decided.  PL. 21–23.

On January 8, 2024, Defendants moved for summary judgment, D. 75, and Bernitz cross-moved for summary judgment.  D. 73.  The Court heard argument on the cross-motions on April 2, 2024 and took the matter under advisement.  D. 87, 88.

III.     Discussion

A.     <u>Standard of Review</u>

"When, as in this case, a plan administrator has discretion to determine an applicant's eligibility for and entitlement to benefits, the administrator's decision must be upheld unless it is 'arbitrary, capricious, or an abuse of discretion.'" <u>Gannon v. Metro. Life Ins. Co.</u>, 360 F.3d 211, 213 (1st Cir. 2004) (quoting <u>Vlass v. Raytheon Emps. Disability Tr.</u>, 244 F.3d 27, 29 (1st Cir. 2001)); <u>see</u> <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 111–12 (1989); <u>Denmark v. Liberty Life Assurance Co. of Bos.</u>, 566 F.3d 1, 9 (1st Cir. 2009).  This standard of review is deferential; that is, "the administrator's decision must be upheld if it is reasoned and supported by substantial evidence." <u>Gannon</u>, 360 F.3d at 213.  "Evidence is substantial if it is reasonably sufficient to support a conclusion, and the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary." <u>Id.</u>  A reviewing court must decide only whether the administrator's denial of benefits was irrational, with any doubts to be resolved in favor of the administrator.  <u>See</u> <u>Liston v. Unum Corp. Officer Severance Plan</u>, 330 F.3d 19, 24 (1st Cir. 2003).

One factor in the analysis of whether a decision is arbitrary and capricious is the structural conflict of interest present where the party that adjudicates claims is also the party responsible for paying out those claims.  <u>Denmark</u>, 566 F.3d at 5 & n.2.  Where an ERISA plan administrator "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket . . . this dual role creates a conflict of interest." <u>Metro. Life Ins. Co. v. Glenn</u>, 554 U.S. 105, 108 (2008).  Where such a conflict exists, "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits." <u>Id.</u>  In determining what weight to afford a structural conflict, "courts are duty-bound

to inquire into what steps a plan administrator has taken to insulate the decisionmaking process against the potentially pernicious effects of structural conflicts."  Denmark, 566 F.3d at 9.

Here, the Group Policy grants USAble Life "the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the policy."  AR. 7540. Accordingly, the Court applies the "arbitrary and capricious" standard of review and must uphold USAble Life's determinations unless they were irrational.  See Liston, 330 F.3d at 24.

Because USAble Life both adjudicated Bernitz's claim and also bore responsibility for paying out benefits, however, a structural conflict exists.  See Glenn, 554 U.S. at 108.  The Court affords little weight to same because USAble Life took sufficient steps to insulate its claims determination process.  See Denmark, 566 F.3d at 9.  For instance, USAble Life referred Bernitz's claim file to third-party physicians for their independent review of the medical records and other evidence.  See, e.g., AR. 7062 (noting that the medical opinions contained in Nurse Fielding's report "reflect the medical reviewer's independent judgment"); see also Ovist v. Unum Life Ins. Co., No. 4:17-cv-40113-TSH, 2020 WL 1931755, at *8 (D. Mass. Feb. 21, 2020) (concluding that a plan administrator "limited[ed] the impact" of a structural conflict by retaining independent physicians to review the plan participant's claim file), report and recommendation adopted, 2020 WL 1931958 (D. Mass. Mar. 27, 2020), aff'd, 14 F.4th 106 (1st Cir. 2021).  In addition, USAble Life used a separate appeals unit to review the denial of benefits.  See Salvador v. Liberty Life Assurance Co. of Bos., No. 12-cv-30196-MAP, 2014 WL 3749206, at *8 (D. Mass. July 28, 2014) (noting that defendants mitigated the structural conflict by "us[ing] an appeals unit to review the denial of benefits that was separate from the initial claims process").  Given the steps taken by USAble Life, and absent any meaningful showing of bias by Bernitz, the Court does not afford USAble Life's structural conflict significant weight in its review under the arbitrary and capricious

standard.  See id. at *9 (noting that "[t]he possibility that a conflict may bias a plan administrator's decision is not enough:  Plaintiff must specify evidence in the record showing how").

      **B.**      **USAble Life's Denial of LTD Benefits Was Not Arbitrary and Capricious**

Defendants argue that the administrative record "overwhelmingly supports" USAble Life's decision to terminate Bernitz's LTD benefits.  D. 72 at 26–33.  Bernitz rejects same and maintains that USAble Life failed to provide Bernitz's claim with a full and fair review and that its decision to terminate his benefits should be set aside.  D. 74 at 21–30.  The Court first considers USAble Life's initial denial of Bernitz's claim and then reviews its handling of Bernitz's appeal of same.

On December 12, 2019, USAble Life notified Bernitz's counsel by letter that USAble Life had completed a review of Bernitz's claim for LTD benefits and concluded that Bernitz no longer met the Group Policy's definition of disability.  AR. 3753.  USAble Life acknowledged that, on May 19, 2017, USAble Life had received a statement from Dr. Patel, in which Dr. Patel opined that Bernitz was unable to work at any level due to "failed back syndrome" and that Bernitz's condition was permanent and irreversible.  AR. 3754.  USAble Life also noted that, as of October 4, 2017, Dr. Russell similarly had found that Bernitz was disabled based on his review of the available medical records.  AR. 3754.

USAble Life nonetheless determined that Bernitz's condition had begun to improve around 2018.  See AR. 3755–57.  For instance, USAble Life noted that Bernitz's application for SSDI benefits had been denied by an ALJ and that the denial had been affirmed by the Social Security Appeals Council.  AR. 3755; see Bard v. Bos. Shipping Ass'n, 471 F.3d 229, 242 n.17 (1st Cir. 2006) (explaining that an ALJ's denial of Social Security benefits, while not dispositive, may inform an ERISA claims administrator's decision to deny benefits); Leahy v. Raytheon Co., 315 F.3d 11, 20 (1st Cir. 2002) (concluding that the plaintiff's unsuccessful application for social

16

security disability benefits provided "some evidence that he was not fully disabled").  In the ALJ's decision, the ALJ stated that Bernitz's report of symptoms had been inconsistent with evidence of his activities "including taking college classes, driving, taking walks up to half a mile, cooking, taking out the trash, and caring for a dog," AR. 5474, and that Bernitz was "capable of performing past relevant work as a vice president and program manager."  AR. 5478.

USAble Life further explained that, according to updated medical records from 2018 and 2019, Bernitz's condition "had clearly improved with significant weight loss" and the ability "to engage in various physical activities that he was unable to perform prior to his date of loss." AR. 3755.  In support, USAble Life cited medical records indicating that Bernitz had lost twenty pounds as part of a weight loss program with Dr. Fujioka, that he was no longer taking gabapentin and that he was "playing pickle ball and walking six days per week, up to an hour at a time." AR. 3755.  USAble Life also referenced medical records indicating that Bernitz had gone on international trips to Baja, Mexico and to "multiple safari parks" in Africa and that his weight had further reduced by about thirty pounds.  AR. 3755.  In addition, USAble Life summarized the findings of USAble Life investigators, who observed Bernitz walking, entering, exiting and driving his vehicle without any signs of discomfort or gait issues and saw him exercising at a gym using the treadmill, lifting barbells and using a weight machine.  AR. 3755; see Tsoulas v. Liberty Life Assurance Co. of Bos., 454 F.3d 69, 79–80 (1st Cir. 2006) (permitting insurer's reliance on surveillance evidence that contradicted claimant's reports of impairment); Gammon v. Reliance Standard Life Ins. Co., 444 F. Supp. 3d 221, 231 (D. Mass. 2020) (noting that surveillance evidence contradicting the plaintiff's assertions "lends credibility" to the plan administrator's judgment).  In light of this evidence, USAble Life again consulted the opinion of Dr. Russell, who had previously found Bernitz disabled.  AR. 3754; AR. 3756.  Dr. Russell opined that, upon his review of the

updated record, Bernitz was "no longer impaired from performing a full-time light physical demand occupation."  AR. 3756.

Although Bernitz asserts that USAble Life's determination cannot stand given the opinions of his treating physicians, such as Dr. Patel, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003); see also Gannon, 360 F.3d at 216 (emphasizing that "ERISA does not require plan administrators or reviewing courts to accord special deference to the opinions of treating physicians"); Falk v. Life Ins. Co. of N. Am./Cigna Grp. Ins., No. 12–cv–178–JL, 2013 WL 5348189, at *11 (D.N.H. Sept. 23, 2013) (noting that "a treating physician, in a close case, may favor a finding of 'disabled'") (quoting Black & Decker Disability Plan, 538 U.S. at 832). Nor is it the case that USAble Life disregarded, or otherwise failed to engage with, these opinions; rather, USAble Life consistently referred records by treating physicians—as well as the updated evidence—to third-party physicians for their independent analysis.  See, e.g., AR. 4739–47; AR. 5949–61; AR.  6225–30; AR. 7057–62.  Thus, USAble Life's reliance upon the opinions of Dr. Russell (who had previously found that Bernitz was disabled) and other developments in the record, as opposed to the opinions of Bernitz's treating physicians, was not arbitrary and capricious.  See Gannon, 360 F.3d at 213 (noting that "the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary").

At base, USAble Life rooted its determination that Bernitz's condition had improved in substantial evidence, including, *inter alia*, the ALJ's denial of Bernitz's application for SSDI benefits (and the Social Security Appeals Council's affirmance of same), his significant weight

loss and the medical benefits of same, his travel to domestic and international destinations, and the personal observations of investigators.[5]

Discerning no error with respect to USAble Life's termination of Bernitz's LTD benefits, the Court turns to USAble Life's handling of his administrative appeal.  On March 9, 2022, on appeal of denial, USAble Life concluded that the decision to terminate Bernitz's LTD benefits had been correct.  AR. 426–35.  USAble Life explained that it had reconsidered the records previously submitted, as well as new documentation submitted on appeal.  AR. 426.

USAble Life noted that an independent medical review had been completed by Dr. Maguire on October 2, 2020 and that Bernitz's counsel had responded to the results of this review with an FCE report by Tourtellot.  AR. 428–29.  Although Tourtellot opined that Bernitz had no demonstrated ability to perform work at any level, including with accommodations, AR. 429, USAble Life did not credit her opinions in light of inconsistencies identified by Dr. Maguire in the FCE report, for instance, that Tourtellot had noted that Bernitz had given "maximal effort" but did not sufficiently document Bernitz's patterns of movement or "measur[e] physiological responses to [Bernitz's] activity level or pain such as increased heart rate or respiratory rate."  AR. 429.  In addition, USAble Life referred Bernitz's claim file to Dr. Kaplan for his independent review of the medical record.  AR. 429.  Dr. Kaplan reviewed Tourtellot's FCE report and, like Dr. Maguire, found that it contained "numerous inconsistencies," adding that it was "not clear that the techniques used in the FCE are valid to distinguish between physical requirements lower than that

---

[5] Bernitz cites McDonough v. Aetna Life Insurance Co., 783 F.3d 374, 380 (1st Cir. 2015), to argue that USAble Life failed to conduct a sufficient vocational assessment.  D. 74 at 22–23. Under McDonough, 783 F.3d at 380, USAble Life was required to "review [ ] the material duties of the claimant's particular position" and "assess[ ] [ ] how those duties align with the position as it is normally performed in the national economy."  Here, USAble Life did so, as evidenced by the vocational assessment of Marques, AR. 4702–06, which was also provided to reviewing physicians.  See, e.g., AR. 2645.

of a medium physical demand level." AR. 430.  In light of these conclusions, USAble Life had ample basis in Dr. Maguire and Dr. Kaplan's opinions to afford little weight to Tourtellot's findings as to Bernitz's functional capacity.

On appeal, Bernitz also pressed the issue of his mental health and provided USAble Life with the results of neuropsychological testing conducted by Dr. Bekken on September 10, 2021. AR. 432; AR. 703–04.  USAble Life did not ignore Dr. Bekken's findings, but instead referred her report and numerous addendum reports to Dr. Kaplan and Dr. Spica for their consideration and response.  See AR. 473–75; 702–04.  As related by USAble Life, Dr. Spica opined that Bernitz's test results were "well within normal limits across neurocognitive domains." AR. 432.  Dr. Kaplan noted that, based on additional records from December 2021, Bernitz's routine use of marijuana, in combination with opioids, may have been contributing to his reported cognitive deficits and, thus, the same were "not due to a fundamental underlying medical diagnosis." AR. 474.  USAble Life facilitated an extensive back-and-forth between Dr. Kaplan and Dr. Spica, on the one hand, and Dr. Bekken, on the other, consisting of reports and letters engaging with one another's opinions.  See PL. 74–76; D. 85; PL. 91–93; PL. 137–38; PL. 148–49; PL. 449–50; PL. 473–74; PL. 483–84; PL. 496–501; PL. 510–12; PL. 521; PL. 527–29; PL. 537–39.  Ultimately, they could not reach agreement, and USAble Life decided to afford Dr. Kaplan and Dr. Spica's opinions more weight—a determination that USAble Life reasonably could have reached on this record.  See Gannon, 360 F.3d at 214 (explaining that it is not "for a court to determine precisely how much weight [an insurer] should have accorded [one physician's opinion] in its overall decision"); Leahy, 315 F.3d at 19 (noting that "when the medical evidence is sharply conflicted, the deference due to the plan administrator's determination may be especially great").  The Court, thus,

concludes that USAble Life's handling of Bernitz's administrative appeal was not arbitrary or capricious.[6]

## IV.     Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is ALLOWED, D. 75, and Bernitz's motion for summary judgment is DENIED, D. 73.

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

[6] To the extent Bernitz maintains that USAble Life was required to expressly assess each piece of evidence in its denial letters, this plainly would be impractical given a voluminous record of more than 8,000 pages.  <u>See</u> D. 42-1; D. 42-2; D. 42-3; D. 42-4; D. 42-5; D. 42-6; D. 42-7. Moreover, the First Circuit has explained that "[t]he denial letter need not detail every bit of information in the record; it must have enough information to render the decision to deny benefits susceptible to judicial review."  <u>Orndorf v. Paul Revere Life Ins. Co.</u>, 404 F.3d 510, 526 (1st Cir. 2005); <u>see</u> <u>Spenrath v. Guardian Life Ins. Co.</u>, 564 Fed App'x 93, 98 (5th Cir. 2014) (explaining that "it would be impractical to require the plan administrator to mention each piece of evidence it considered in reaching its conclusion").  As evidenced by the Court's review, USAble Life's denial letters have cleared that bar.